The relief described hereinbelow is SO ORDERED.

SIGNED this 15th day of March, 2019.



Robert D. Berger
United States Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re:

**MARCUS DEVONNE BRIGGS**,

           Case No. 13

     Debtor.      Chapter 18-22070

---

**MEMORANDUM OPINION AND ORDER NUNC PRO TUNC**
**<u>OVERRULING CREDITOR'S OBJECTION TO CONFIRMATION</u>**

  This matter comes before the Court on creditor Randy Curnow Buick GMC Inc.'s objection to the confirmation of debtor Marcus DeVonne Briggs's Chapter 13 plan. For the reasons stated below, the objection to confirmation will be overruled.

  Briggs obtained a 2015 Chevrolet Impala from Randy Curnow, a car dealership in Kansas City, Kansas, on May 25, 2018. He made a $2,600 down

payment and agreed to pay the remaining amount due, $16,236.95, over 60 months at 22.70% interest. A "Retail Installment Sale Contract – Simple Finance Charge" (the "**Contract**"), signed by Briggs as "Buyer" and Randy Curnow as "Seller-Creditor," memorializes the terms of the agreement between the parties. The Contract grants Randy Curnow a security interest in the Impala and provides:

> You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy this vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Seller-Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge[1] in U.S. funds according to the payment schedule below.

Randy Curnow, however, is not in the loan business. Accordingly, Briggs and Randy Curnow executed a second document along with the Contract on May 25, 2018: the "Conditional Delivery Agreement" ("**CDA**"). The CDA provides, in relevant part:

> Although the Customer has been permitted to take possession of the above-described Vehicle, the Customer understands that financial approvals and documentation for the purchase/lease of the Vehicle has [sic] not been finalized. This is known as a "Conditional Delivery." The Dealership and the Customer intend that the funds needed for the purchase/lease of the Vehicle will be obtained directly from a third party, or, that the Retail Installment/Lease Contract the customer signed to complete the transaction will be assigned to that third party. The Customer understands that this Condition [sic] Delivery Agreement is for the purpose of allowing the Customer to take possession of the Vehicle, subject to the following terms and conditions, until a final approval of

---

[1] The Contract's TILA disclosures list the "Amount Financed" as $16,236.95 and the "Finance Charge" as $11,312.65.

>
> the Customer's application for financing/leasing is made by the third party.
>
> . . .
>
> 2. If the Dealership or the third party requests additional information from the Customer, the Customer shall promptly provide the requested information. . . .
>
> 3. In the event that the financing/lease is not approved by a third party for the Customer's purchase/lease of this Vehicle or the Dealership is unable to assign the Retail Installment/Lease Contract to a third party within three (3) days, the Customer agrees that upon request that they shall immediately return the Vehicle to the Dealership, or, pay the Dealership the balance due, as reflected in the Retail Purchase Agreement.
>
> . . .
>
> This Conditional Delivery Agreement is incorporated by reference into the Retail Purchase Agreement.

A signature block on the third page of the Contract, apparently initialed by a representative of Randy Curnow, purports to assign the Contract to Global Lending Services. However, the record contains no evidence that Global Lending Services agreed to the assignment.

Briggs filed for bankruptcy on October 4, 2018. His Chapter 13 petition values the Impala at $12,972.00 and lists Randy Curnow as a secured creditor with a claim for $16,236.95. Randy Curnow filed a claim for $27,549.60—$16,236.95 for the balance due on the Impala and $11,312.65 for finance charges. Briggs's Chapter

3

13 plan proposes to keep the Impala and pay Randy Curnow $16,236.95[2] plus "interest at the Trustee's discount rate in effect on the date the petition was filed," with a minimum monthly payment of $283.00. Randy Curnow objects to confirmation on two grounds: first, that the plan retains the Impala in violation of 11 U.S.C. § 541, and second, that the plan crams down the interest rate in violation of 11 U.S.C. § 1325.

First, Randy Curnow argues that Briggs may not keep the Impala because it is not property of the estate. Randy Curnow reasons that sale of the Impala was contingent upon assignment of the Contract or third-party financing approval, and that since neither of those events occurred, it never sold the Impala to Briggs. This argument fails because neither the Contract nor the CDA contain such a contingency, and even if they did, Kansas law does not permit Randy Curnow to retain title to the Impala under the facts of this case.

The Contract unconditionally sells the Impala to Briggs without reference to assignment or third-party financing, except to say that either is permissible. Contrary to Randy Curnow's assertion, the CDA does not make sale contingent upon those events, either. Rather, if the Contract is not assigned, and third-party financing not obtained, paragraph 3 of the CDA gives Briggs the option to retain the Impala and pay the balance due—precisely what his Chapter 13 plan proposes,

---

[2] Briggs incurred the debt at issue here fewer than 910 days before filing for bankruptcy. Thus, the "hanging paragraph" of § 1325 prevents Briggs from using 11 U.S.C. § 506 to strip Randy Curnow's secured claim down to the value of the Impala.

4

albeit with installment payments over three years rather than with a lump sum. And while paragraph 7 of the CDA does attempt to reserve title to the Impala in Randy Curnow if the Contract is not assigned and third-party financing not obtained, the Impala was delivered to Briggs on May 25, 2018. After delivery, the Kansas uniform commercial code limits the effect of Randy Curnow's reservation of title in the Impala to that of a security interest. *See* K.S.A. § 84-2-401(1) ("Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest.").[3]

Under these facts, the Impala is property of the estate under § 541, with Randy Curnow retaining a security interest. Other courts have applied § 2-401(1) of the Uniform Commercial Code to similar "conditional delivery" agreements, also known as "spot delivery" or "yo-yo financing" agreements, to reach similar conclusions. *See In re Byrd*, 546 B.R. 434, 440-41 (Bankr. D. Idaho 2016); *In re Jones*, Nos. 12-14608, 12-15179, 2013 WL 1092099, at *4-*7 (Bankr. E.D. Tenn. Jan. 17, 2013); *In re Joyner*, 326 B.R. 334, 341-43 (Bankr. D.S.C. 2004); *In re Johnson*, 230 B.R. 466, 468-69 (Bankr. D.D.C. 1999); *see also In re Wild West World, L.L.C.*, No. 07-5257, 2008 WL 4642266, at *4 (Bankr. D. Kan. Oct. 17, 2008) (Nugent, J.).

---

[3] Randy Curnow cites *Ed Bozarth Chevrolet, Inc. v. Black*, 96 P.3d 272 (Kan. Ct. App. 2003), in support of its argument that title did not pass to Briggs. However, as observed in *In re Robson*, No. 04-7015, 2005 WL 6168476, at *7 (Bankr. D. Kan. Sept. 22, 2005) (Somers, J.), *Ed Bozarth* does not address K.S.A. § 84-2-401. Rather, *Ed Bozarth* holds that a spot delivery agreement did not violate the Kansas Consumer Protection Act, K.S.A. § 50-623 et seq., or the manufacturer's statement of origin statute, K.S.A. § 8-135(c)(3).

5

Pointing out that Briggs obtained the Impala just months before filing for bankruptcy, Randy Curnow next argues that confirmation is inappropriate because "Debtor should not be permitted to cram down the interest rate of the loan." According to Randy Curnow, the "hanging paragraph" of § 1325 requires Briggs to pay the contract interest rate of 22.70%. This argument fails as well. While the hanging paragraph does prevent cramdown of Randy Curnow's secured claim under § 506, *see* note 2 *supra*, it says nothing about the required rate of interest on the claim. And while § 1325(a)(5)(B)(ii) does require Briggs to pay interest, it does not require him to pay the contract rate. *See Till v. SCS Credit Corp.*, 541 U.S. 465, 477-78 (2004) (plurality opinion) (approving interest rate of prime plus 1.5%); *id.* at 487 (Thomas, J., concurring) (stating that § 1325(a)(5)(B)(ii) does not require prime rate to be adjusted upward for risk of nonpayment); *cf. In re Jones*, 530 F.3d 1284, 1289 n.3 (10th Cir. 2008).

Here, Briggs's plan proposes to pay interest on Randy Curnow's claim at the Chapter 13 Trustee's discount rate: prime plus 1.5%.[4] That rate was approved by five justices in *Till*, *cf.* 541 U.S. at 480, 487, and appears on the form Chapter 13 Plan approved by the judges of this Court. *See* Bankr. D. Kan. Second Am. Standing Order 17-1 (adopting revised form Chapter 13 Plan); Bankr. D. Kan. Form Chapter 13 Plan § 11.3 (providing that secured claims other than secured tax claims will be paid interest at the Trustee's discount rate in effect on the date the petition

---

[4] This "prime-plus" rate was 6.75% when Briggs filed his Chapter 13 petition in October 2018.

6

was filed). Here, Randy Curnow presents no evidence supporting a higher rate. *Cf. Till*, 541 U.S. at 484 (stating that the burden is on the creditor to present such evidence). Moreover, given Briggs's $2600 down payment and the minimum monthly payment of $283 that will go toward its secured claim, Randy Curnow's interest is well-protected. Under these circumstances, Briggs's proposed interest rate is sufficient under § 1325(a)(5)(B)(ii).

For the reasons stated above, Randy Curnow's objection to confirmation is overruled. Briggs's Chapter 13 plan will be confirmed by separate order.

IT IS SO ORDERED.

###